IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | ) | |
|---|---|---|
| ATLANTIS CONSULTANTS LIMITED CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 1:15-cv-439-CMH-MSN |
| TERRADYNE ARMORED VEHICLES, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

### **MEMORANDUM OPINION & ORDER**

This matter is before the Court on Plaintiff's Motion for Sanctions (Dkt. No. 156) and Motion to Compel (Dkt. No. 157). Having heard the arguments of counsel and reviewed the Motions, Defendant's Oppositions to the Motions (Dkt. Nos. 178, 179), and Plaintiff's Replies in Support of the Motions (Dkt. Nos. 183, 184), the Court will deny the Motions for the reasons that follow.

**I. Background**

Defendant Terradyne Armored Vehicles is "a Canadian designer, developer, tester, and manufacturer of armored personnel carriers and light tactical vehicles for military and law enforcement." Am. Compl. (Dkt. No. 43) ¶ 16. Defendant contracted with Plaintiff Atlantis Consultants Limited Corporation, "a Virginia consulting and marketing firm," to "make connections with the ministry of a foreign government." *Id*. ¶¶ 2, 15. Their agreement contemplated that Plaintiff would receive a commission on vehicles sold to the foreign government by Defendant as a result of Plaintiff's efforts.

The parties differ in their account of the events that led to this litigation. Plaintiff "alleges

that in the summer of 2014 [Defendant] engaged in a secret course of conduct to circumvent its commission agreement with Atlantis by selling its [vehicles]" to the foreign government "through a third-party, SafeCage Armour Works FZ LLC." Mem. in Supp. of Mot. for Sanctions (Dkt. No. 153) at 1. Defendant, on the other hand, claims that Plaintiff was "entitled to commissions[ ] only if [Plaintiff] secured [Defendant] a contract to sell the [vehicles] to" the foreign government. Opp. to Mot. to Compel (Dkt. No. 178) at 1. Because Plaintiff failed to do so, Defendant claims that it was free to secure a deal with SafeCage, which Defendant characterizes as "a transaction [Plaintiff] had nothing to do with." *See id.* at 1-2.

## II. Analysis

### A. Motion for Sanctions

Plaintiff's Motion for Sanctions stems from difficulties Plaintiff encountered in obtaining discovery from Andrew Preston, an independent contractor who brokered both Plaintiff's deal with Defendant and Defendant's deal with SafeCage. Mem. in Supp. of Mot. for Sanctions (Dkt. No. 153) at 2. Mr. Preston allegedly served as "the hub of communications" between Plaintiff, Defendant, SafeCage, and the foreign government. *Id.* at 3. Plaintiff also claims that Mr. Preston personally "drove [Defendant]'s breaches of" its agreements with Plaintiff. *Id.* at 2.

Plaintiff first sought an order compelling Defendant to produce Mr. Preston's relevant emails on August 28, 2015. *See* Mot. to Compel (Dkt. No. 67). In opposing that Motion, Defendant argued that Mr. Preston "is an independent contractor," and so "any potentially responsive documents within his possession are documents that are not in the possession, custody, or control of [Defendant]." Opp. to Mot. to Compel (Dkt. No. 72) at 7 (emphasis omitted). The Court, however, granted Plaintiff's Motion, finding that it was "appropriate to place the burden on Terradyne to obtain those documents from Mr. Preston." Opp. to Mot. for

Sanctions Ex. K (Sept. 4, 2015 Hearing Transcript) (Dkt. No. 186-11) at 29. The Court held that Defendant had a legal right to Mr. Preston's documents to the extent that they related to Mr. Preston "binding [Defendant] and signing his name as [Defendant's] director of marketing," but not to documents generated by Mr. Preston "in any individual capacity." *Id*. at 28.

Plaintiff filed a Second Motion to Compel (Dkt. No. 83) with respect to Mr. Preston's emails on October 9, 2015, claiming that as of that time Defendant "ha[d] not produced a single document collected from Andrew Preston." Mem. in Supp. of Second Motion to Compel (Dkt. No. 84) at 10. Defendant countered that it had produced relevant emails to and from Mr. Preston stored on its own servers, and had "made several requests to Mr. Preston for the documents" in his personal email accounts. Opp. to Second Mot. to Compel (Dkt. No. 94) at 12. Defendant again protested, however, that Defendant "does not control [Mr. Preston] or his email accounts." *Id*. The Court granted Plaintiff's Motion, ordering Defendant "to try and make every effort to collect those documents" within ten days. Mem. in Supp. of Mot. for Sanctions Ex. 19 (Oct. 16, 2015 Hearing Transcript) (Dkt. No. 165-18) at 20. Pursuant to the Court's order, Defendant certified its efforts to obtain documents from Mr. Preston in an affidavit (Dkt. No. 106) filed on October 26, 2015.

Discovery now having closed, Plaintiff moves for sanctions against Defendant in connection with the above motions, claiming Defendant "has made only a superficial effort to comply with this Court's orders and intentionally withheld numerous categories of requested and clearly relevant information." Mem. in Supp. of Mot. for Sanctions (Dkt. No. 153) at 3. In particular, Plaintiff argues that Defendant failed to produce emails from two of Mr. Preston's personal accounts—his JAMACO and apmail.net accounts—as directed by the Court. Plaintiff requests that the Court impose sanctions under Federal Rule of Civil Procedure 37(b) "including

barring evidence from Preston, barring the assertion of certain defenses raised by [Defendant], drawing adverse inferences from what the missing communications would have shown, and awarding fees and costs." *Id*. at 5.

In response, Defendant does not contest that Mr. Preston is a key witness in this litigation. Nor does Defendant seriously contest that it has failed to produce potentially relevant emails from Mr. Preston's personal accounts. Rather, Defendant asserts that it repeatedly asked Mr. Preston for the emails in question, that Mr. Preston refused to produce some of the requested emails, and consequently those emails are "simply beyond [Defendant's] reach." Opp. to Mot. for Sanctions (Dkt. No. 179) at 4, 15. Defendant argues that its good faith efforts to obtain Mr. Preston's emails satisfy its discovery obligations. *Id*. at 14-15. It contends further that the foregoing demonstrates that Defendant lacks "possession, custody, or control" of Mr. Preston's emails within the meaning of Federal Rule of Civil Procedure 34(a)(1), such that it did not violate that Rule by failing to provide them. *Id*. at 5.

Plaintiff counters that the Court's orders directing Defendant to collect emails from Mr. Preston's personal accounts held that Defendant "controls" Mr. Preston's emails for purposes of Rule 34, and therefore Defendant's failure to obtain Mr. Preston's emails constitutes a violation of the Court's orders. Rep. in Supp. of Mot. for Sanctions (Dkt. No. 187) at 5-8. That, however, is an overly restrictive reading of those orders. The Court ordered Defendant "to try and make every effort to collect" Mr. Preston's emails, Mem. in Supp. of Mot. for Sanctions Ex. 19 (Oct. 16, 2015 Hearing Transcript) (Dkt. No. 165-18) at 20, finding that it was "appropriate to place the burden on Terradyne to obtain those documents from Mr. Preston." Opp. to Mot. for Sanctions Ex. K (Sept. 4, 2015 Hearing Transcript) (Dkt. No. 186-11) at 29. The Court, however, acknowledged that Defendant did not necessarily have the legal right or practical

ability to gather all of Mr. Preston's emails generated in connection with this matter, and expressly reserved the issue of "what happens if [Defendant] is unable to get" some responsive documents. *Id*. at 28-29.

Turning to the question of whether Defendant does in fact "control" Mr. Preston's personal emails within the meaning of Federal Rule of Civil Procedure 34(a)(1), the Court concludes that Defendant does not. "Control" under Rule 34 requires "actual possession of a document or the legal right to obtain the document on demand." *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 322 (E.D. Va. 2013). Defendant is not in possession of the emails Mr. Preston has withheld, which are stored on his laptop computer overseas. Moreover, Defendant claims that it has no legal right to demand Mr. Preston's emails, and that demands when made have been futile as to some of Mr. Preston's emails. *See* Opp. to Mot. for Sanctions (Dkt. No. 179) at 5.

Plaintiff appears to concede as much, but suggested at the hearing held on this matter that Defendant could have withheld ongoing payments from Mr. Preston in an effort to force him to turn over his emails. Plaintiff's counsel, however, did not explain what legal basis Defendant would have had for doing so. Indeed, such a strategy would likely have caused Defendant to breach whatever agreement it has with Mr. Preston. Defendant cannot be required to defend one lawsuit only by inviting another.

Notwithstanding the practical impossibility of Defendant's obtaining the documents in question from Mr. Preston, Plaintiff argues that Defendant can still be held liable for failing to produce them under the law of agency. While Plaintiff is correct that "companies are deemed to have control over their agents and, by extension, their agent's documents," Rep. in Supp. of Mot. for Sanctions (Dkt. No. 187) at 15, there is no evidence that Mr. Preston currently serves as Defendant's agent. Whatever their relationship was previously, it appears that Defendant is at

present one of Mr. Preston's several clients. *See* Opp. to Mot. for Sanctions (Dkt. No. 179) at 5. Plaintiff does not contest that Mr. Preston's consulting business has a separate corporate identity, arguing only that Defendant "still pays Preston." Rep. in Supp. of Mot. for Sanctions (Dkt. No. 187) at 16. That, however, is not enough to establish an ongoing agency relationship that would give Defendant a legal right to demand documents from Mr. Preston.

The present situation does not, therefore, resemble the cases cited by Plaintiff regarding principal/agent relationships. Rep. in Supp. of Mot. for Sanctions (Dkt. No. 187) at 15-16. Rather, it is more akin to those cases in which courts have held that one corporation does not "control" the documents of another, notwithstanding a close working relationship. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999) (finding no "control" under Rule 34 where companies "were separate entities under the law" and "no contract" existed that would have given one company "the right to compel [the other] to furnish it with documents in [its] possession"); *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. 04-cv-05368, 2006 WL 3742244, at *3 (N.D. Cal. Dec. 19, 2006) (finding no "control" under Rule 34 where "companies have separate operations, manage separate products, maintain separate finances, and have independent decision-making power over day-to-day operations," notwithstanding evidence that the companies were "closely affiliated"). In such situations, there is "no [legal] mechanism" through which a party may obtain documents sought in discovery, and thus no "control" for purposes of Rule 34. *In re Citric Acid Litig.*, 191 F.3d at 1108. This is so regardless of the third party's prior voluntary cooperation with other discovery requests. *See id.*

Because the Court concludes that Defendant did not breach its obligations under the Court's prior orders or Rule 34, there is no basis for imposing sanctions under Rule 37.

6

Accordingly, Plaintiff's Motion for Sanctions will be denied.[1]

### B. Motion to Compel

Plaintiff asserts that Defendant "has refused to produce certain relevant communications and documents exchanged with SafeCage and has objected to answering certain Requests for Admission about those communications by asserting the common interest privilege." Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 3. SafeCage is "a vehicle armoring company" that Plaintiff claims has worked "in concert with" Defendant as part of Defendant's "scheme . . . to misappropriate the Confidential Information obtained from [Plaintiff], and to circumvent [Plaintiff] in selling its armored vehicles directly or indirectly to the [foreign government]." Am. Compl. (Dkt. No. 43) ¶¶ 50-52. Plaintiff takes the position that Defendant purposely "structured . . . its arrangements with . . . SafeCage" in such a manner as to "evade its obligation to pay commissions to [Plaintiff] for sales of armored vehicles" to the foreign government. *Id.* ¶ 54.

"The joint defense [or common interest] privilege, an extension of the attorney-client privilege, protects communications between parties who share a common interest in litigation." *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 617 F. App'x 227, 243 (4th Cir. 2015); *see also Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010) ("The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims."). The privilege is grounded in the rationale that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute

---

[1] To the extent Mr. Preston has opted to cooperate with Defendant's discovery requests while refusing to produce documents responsive to Plaintiff's discovery requests, Plaintiff is not necessarily without recourse. Courts may for equitable reasons "exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980)); *see also U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-cv-38, 2014 WL 66714, at *4 (E.D. Va. Jan. 6, 2014). Although the Court does not reach the merits of the issue today, such a motion may be the proper vehicle to address whatever prejudice Plaintiff has suffered due to Mr. Preston's refusal to produce his personal emails.

or defend their claims." *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990). It extends beyond parties formulating "a joint legal strategy," *Hanwha Azdel, Inc.*, 617 F. App'x at 243, and can apply "[w]hether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal." *In re Grand Jury Subpoenas*, 902 F.2d at 249. The Fourth Circuit has cited approvingly cases extending the privilege to "civil co-defendants, companies that had been individually summoned before a grand jury who shared information before any indictment was returned, potential co-parties to prospective litigation, plaintiffs who were pursuing separate actions in different states, and civil defendants who were sued in separate actions." *Id*. (citations omitted). "The common interest doctrine does not require a written agreement," but "there must be an agreement or a meeting of the minds" for which there is evidence beyond "[m]ere 'indicia' of joint strategy as of a particular point in time." *Am. Mgmt. Servs., LLC v. Dept of the Army*, 703 F.3d 724, 733 (4th Cir. 2013).

Plaintiff sets forth three arguments as to why the common interest privilege does not apply in this case. First, Plaintiff argues that attorney/client privilege does not attach to these communications, and so there can be no common interest privilege between Defendant and SafeCage. Second, Plaintiff asserts that the relationship between Defendant and SafeCage is not such that would give rise to the privilege. Third, Plaintiff asserts that even if otherwise privileged, the communications fall within the "crime-fraud-tort exception."

As to Plaintiff's first argument, Plaintiff asserts that many of the communications are mere "commercial negotiations" to which attorney/client privilege does not attach. Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 10-11. The basis for Plaintiff's assertion is that many of the communications for which privilege is claimed were made in the month leading up to the

signing of a licensing agreement between Defendant and SafeCage. *See id*. The allegedly privileged communications, however, begin on April 8, 2015, *see id*.—several days after Plaintiff filed suit on April 2, 2015. Plaintiff's assumption that these communications pertain to "commercial negotiations" rather than this litigation is therefore unwarranted. Moreover, Plaintiff's assertion that communications exchanged in formulating Defendant's agreement with SafeCage were mere "commercial negotiations" is inconsistent with Plaintiff's claims—both in its pleadings, *see, e.g.*, Am. Compl. (Dkt. No. 43) ¶ 54, and at the hearing on this matter—that the agreement in question is part of Defendant's legal strategy.

Plaintiff argues further that "[w]hether [Defendant] improperly disclosed [Plaintiff]'s confidential information is an operative fact that cannot be concealed under the attorney client privilege, common interest privilege, or any other privilege." Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 11. In support of this proposition, Plaintiff cites the following passage from *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981): "The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." This passage undermines rather than supports Plaintiff's argument. By inquiring as to what Defendant "disclosed," Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 11, Plaintiff is necessarily asking what Defendant "sa[id] or wr[ote]," *Upjohn Co.*, 449 U.S. at 396, rather than some "fact" that can be divorced from the content of the communications.

Plaintiff next argues that the relationship between Defendant and SafeCage is not such that would give rise to the common interest privilege because "SafeCage is not a party to this litigation, and has not been served with any discovery or process," and there has not "been any

9

threat that SafeCage would be added as a party to this litigation or otherwise sued by Atlantis." Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 13; *see also* Rep. in Supp. of Mot. to Compel (Dkt. No. 183) at 2-5. Assuming, *arguendo*, that Defendant is correct that "actual pending or threatened litigation" is "a prerequisite" to the common interest privilege, Rep. in Supp. of Mot. to Compel (Dkt. No. 183) at 2-5, Plaintiff has accused SafeCage of acting "in concert with" Defendant as part of Defendant's "scheme" to commit torts against Plaintiff. Am. Compl. (Dkt. No. 43) ¶¶ 50-52; *see also id*. ¶¶ 81-90 (setting forth Plaintiff's claim for "Tortious Interference With Existing And Prospective Business Relationships"). In fact, Plaintiff accuses SafeCage of tortious activity within pages of claiming that there is no "threat" of legal action against SafeCage in connection with this matter. *See* Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 14-15. A reasonable observer could therefore infer that there exists a realistic threat of legal action against SafeCage.

Regardless, Plaintiff's assertion that "actual pending or threatened litigation" is "a prerequisite" to the common interest privilege, Rep. in Supp. of Mot. to Compel (Dkt. No. 183) at 2-5, is inconsistent with Fourth Circuit precedent and belied by "[t]he weight of authority" among courts holding that "litigation need not be actual or imminent for communications to be within the common interest doctrine." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007); *see also id*. (listing cases). For example, in *In re Grand Jury Subpoenas*, 902 F.2d at 249, the Fourth Circuit applied the common interest privilege to a corporation and its former subsidiary where there was clearly no pending or threatened litigation as to the latter. The Court found the privilege to apply because the subsidiary was financially "the real party in interest," and "[a] review of cases applying the joint defense privilege reveal[ed] no principled basis upon which to distinguish [the corporation's] relationship with Subsidiary from similar

10

situations in which courts have upheld the privilege." *Id*. Similarly, in *Hunton & Williams v. U.S. Department of Justice*, 590 F.3d at 282, the Fourth Circuit held that the common interest privilege applied to communications between the Department of Justice and a private litigant regarding a case due to the former's "interest in avoiding the serious disruption to its operations that an overly broad . . . injunction would entail."[2]

Likewise here, the Court can divine "no principled basis upon which to distinguish [Defendant's] relationship with [SafeCage] from similar situations in which courts have upheld the privilege." *In re Grand Jury Subpoenas*, 902 F.2d at 249. As discussed above, the nature of Plaintiff's claims demonstrate a threat that Plaintiff could taking legal action against SafeCage in connection with this matter. Moreover, the close alignment of Defendant's and SafeCage's interests with respect to this litigation brings their relationship within the ambit of cases like *In re Grand Jury Subpoenas* and *Hunton & Williams*; should Defendant lose this case, its arrangements with SafeCage would be compromised, leaving SafeCage unable to meet its obligations to third parties. Indeed, Plaintiff's own description of Defendant's joint prosecution of its defense with SafeCage supports finding that the common interest privilege applies:

> [Defendant] agreed, with respect to this litigation, to not contact the Client directly or indirectly (other than through SafeCage), to update SafeCage on material developments, to consult with SafeCage concerning settlement, to obtain a full release of any claims [Plaintiff] may have against SafeCage, and to use its best efforts to limit the impact of its compliance with any compulsory process or order on its dealings with SafeCage.

Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 6-7.

The question, then, is when the privilege arose. Defendant asserts in its opposition that

---

[2] Plaintiff attempts to distinguish *Hunton & Williams* by pointing out that the Department of Justice did eventually intervene, and thus its involvement in litigation was in a sense "imminent." Rep. in Supp. of Mot. to Compel (Dkt. No. 183) at 3. The Fourth Circuit, however, makes no mention of that fact in explaining why the privilege applies in *Hunton & Williams*, and in fact found that the privilege arose several months before the "DOJ's decision to intervene in the litigation." 590 F.3d at 281, 282. If the privilege can arise months before a party has decided to formally involve itself in litigation, it does not require "actual pending or threatened litigation."

the privilege arose once Plaintiff sought an injunction. *See* Opp. to Mot. to Compel (Dkt. No. 178) at 6. At the hearing on this matter, however, Defendant took the position that the interest arose upon the filing of Plaintiff's Complaint. The Court finds the latter position more persuasive, given that the material reasons for finding that the common interest privilege applies—Plaintiff's implicit threat against SafeCage and the close alignment of Defendant's and SafeCage's interests regarding this litigation—commenced at that time.[3] Thus, the privilege arose before any of the communications at issue were made.

Lastly, Plaintiff claims that even if privileged, communications between Defendant and SafeCage made in the course of negotiating and performing their agreement fall within the crime-fraud-tort exception to the attorney-client privilege." Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 14. This exception "excludes communications from the attorney-client privilege where a client sought the advice of counsel to commit or further a crime or fraud, and the privileged materials are closely related to the client's existing or future criminal or fraudulent scheme. *Flexible Benefits Council v. Feltman*, No. 1:08 CV 371 JCC, 2008 WL 4572511, at *4 (E.D. Va. Oct. 8, 2008). The exception applies if there exists "enough evidence to support a verdict in favor of the party making the claim." *Id*. at *5 (quoting *In re Grand Jury Proceedings*, 401 F.3d 247, 251 (4th Cir. 2005)).

Plaintiff asserts that the licensing agreement between Defendant and SafeCage is "tantamount to hiding assets from a judgment creditor." Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 14. Plaintiff does not, however, adequately explain this parallel. Defendant has not placed its assets beyond the Court's reach through its agreement with SafeCage. This analogy

---

[3] The record also strongly suggests that a meeting of the minds as to the parties' joint interest in this litigation occurred at the same point. Indeed, it is difficult to imagine that Defendant and SafeCage would not recognize their common interest upon the filing of a lawsuit accusing both parties of tortious activity in connection with their joint venture.

falls short of demonstrating "enough evidence to support a verdict" in Plaintiff's favor as to the purportedly fraudulent nature of Defendant's agreement with SafeCage. *Flexible Benefits Council*, 2008 WL 4572511, at *5. Nor does Plaintiff provide such evidence for its claim that Defendant and SafeCage endeavored to "conceal[ ] their true dealings" by "pledg[ing] to enter into 'full agreements' after 'things have settled'—meaning the Atlantis litigation is over." Mem. in Supp. of Mot. to Compel (Dkt. No. 164) at 15. The email quoted in support of this allegation reads:

> In respect of the full agreements that need to be put together per the MOA, I think we have time until the respective SCAW and TAV teams work to organize the first project and delivery, as this is the priority! We can touch base once things have settled and the project execution is in progress.

Ex. D (Dkt. No. 164-2). The email appears to reflect that Defendant and SafeCage intended to hold discussions after production had commenced. It does not clearly demonstrate a fraudulent intent. In short, Plaintiff does not provide sufficient evidence to support a finding that communications between Defendant and SafeCage fall into the crime-fraud-tort exception to the attorney/client privilege. Indeed, at the hearing on this matter, Plaintiff's counsel appeared to argue that Plaintiff would have to see the communications in question in order to make such a showing—a tacit admission that it had not carried its burden.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Plaintiff's Motion for Sanctions (Dkt. No. 156) is DENIED. It is further

ORDERED that Plaintiff's Motion to Compel (Dkt. No. 157) is DENIED.

ENTERED this 16th day of December, 2015.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

Alexandria, Virginia